IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SIGNA DEVELOPMENT SERVICES, INC., a Nebraska corporation d/b/a AMSPORT USA,<br><br>Plaintiff,<br><br>vs.<br><br>AMERICAN INTERNATIONAL MATERIALS LLC, a Delaware limited liability company, and ATOKA INTERNATIONAL, LLC, a Delaware limited liability company,<br><br>Defendants. | NO. 8:23-CV-415<br><br><br>MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS |

Defendants American International Materials, LLC (AIM) and Atoka International, LLC (Atoka) (collectively, Defendants) have moved to dismiss the Amended Complaint filed by plaintiff Signa Development Services, Inc. (Signa). Defendants seek dismissal pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) for lack of personal jurisdiction and improper venue, respectively. For the reasons stated below, the Court denies Defendants' Motion.

## I. INTRODUCTION

### A. Factual Background

On a motion to dismiss pursuant to Rules 12(b)(2) and 12(b)(3), the facts are drawn "not [from] the pleadings alone, but [also from] affidavits and exhibits supporting or opposing the motion." *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014). Defendants included with their Brief in Support of the Motion to Dismiss an affidavit from Paul Baman Rusby,

1

who is a member of AIM and of Atoka. Filing 3-1. Signa included in its Opposition Brief to Defendants' Motion to Dismiss an affidavit from Thomas Schmidt, the President of Signa. Filing 9 at 8–11. The facts are drawn from the Amended Complaint and these affidavits. The facts are only disputed where indicated.

In or around July 2021, Signa allegedly entered into an oral agreement[1] with Defendants under which Signa would sell sport-hunting ammunition that was imported by Defendants. Filing 1-7 at 2 (¶¶ 6–7). Pursuant to their agreement, Signa and AIM would split profits 50/50 after reimbursable expenses. Filing 1-7 at 2 (¶ 8). The alleged reimbursable expenses for each party are as follows: "Signa would be reimbursed for the following expenses: warehousing, packing, shipping/delivery, and financing expenses. AIM would be reimbursed for the following expenses: importing (water/air), domestic transportation, and taxes." Filing 1-7 at 2 (¶ 8). Signa alleges that "[i]n or around March 2023, Plaintiff, for the first time and contrary to the previous representations of Defendants, learned that Defendants were not the exclusive importers of certain ammunition loads and may have been inflating importing and transportation expenses." Filing 9 at 2. Signa further alleges that "Defendants were not properly accounting for ammunition loads and not properly distributing profits to Plaintiff," which caused "the business relationship . . . to end." Filing 9 at 2.

Despite its claim that Signa and Defendants "undertook and entered into a joint venture," Filing 9 at 2, Signa also alleges that it was acting as the "agent" of Defendants. Filing 9 at 4 ("For almost two (2) years, Defendants relied upon Plaintiff acting as an agent for Defendants to receive, warehouse and sell ammunition."). Specifically, Signa avers that it "was and acted as an agent for

---

[1] Defendants dispute whether there was ever a contract between the parties. Filing 3-1 at 2–3 (¶¶ 21–22).

AIM in this joint venture" and that "[a]s AIM's agent, Signa received payments from over 65 online sales transactions of PPU,[2] including payments from customers in Nebraska." Filing 9 at 9 (¶ 9). Defendants aver that the relationship was an "alleged joint venture," not an agency relationship, and that a "joint venture arrangement and a principal/agency relationship are not interchangeable." Filing 11 at 3–4.

Signa describes the alleged joint venture agreement: "In July 2021, Signa entered into a joint venture with American International Materials, LLC and Atoka International, LLC (collectively hereinafter 'AIM') for the sourcing and commercial selling of sport-hunting ammunition into the North American (U.S. and Canada) market. Signa and AIM were to share profits 50/50 and each party was to be reimbursed for certain expenses." Filing 9 at 9 (¶ 8). Signa also describes actions allegedly taken by Signa with regard to the joint venture, as follows:

> **10.** Signa and AIM frequently communicated via telephone (over 680 telephone calls), zoom calls and email (over 760 emails) regarding various transactions, including banking transactions, and ammunition loads.
>
> **11.** In order to finance the joint venture between Signa and AIM, Signa secured financing for the purchase of both Winchester loads and PPU loads. As part of the financing, [Officers of Signa] had to pledge certain assets with a Nebraska bank, including our home residences, both located in Omaha, Nebraska.
>
> **12.** Signa paid AIM from Signa's Nebraska bank account, among other accounts, certain funds for prepaid ammunition loads and AIM received said funds. After Signa sold said ammunition loads via online retail stores (including sales in Nebraska), Signa would transfer certain funds from Signa's Nebraska bank account to AIM's bank account, and AIM received said funds.
>
> **13.** AIM relied upon Signa's contacts with third parties for AIM's expansion into the North American (U.S. and Canada) market.

---

[2] The only information provided to this Court regarding "PPU" is Mr. Schmidt's declaration: "Around May 4, 2020, Mr. Rusby made representations to me that he was the exclusive importer of PPU, a Serbian ammunition manufacturer." Filing 9 at 9 (¶ 6).

Filing 9 at 9–10 (¶¶ 10–13). Conversely, Defendants dispute that an agreement between Defendants and Signa ever existed. Rather, Defendants aver that Defendants and Signa "discussed entering into a joint venture in which the parties would share the costs of buying imported ammunition and shipping it to customers, and where they would also share in the profits from those sales," but "AIM and Signa did not enter into a joint venture because Signa was unwilling to share in the costs to import ammunition into the United States and ship it to customers." Filing 3-1 at 2–3 (¶¶ 21–22).

### B. Procedural Background

On March 29, 2023, Signa filed its Complaint in the Douglas County District Court in Omaha, Nebraska. Filing 1-3. Signa filed an Amended Complaint on August 15, 2023. Filing 1-7. The Amended Complaint seeks a judicial accounting and declaratory judgment stating that Defendants are liable to Signa for over $1.4 million due to Defendants having "in their possession and under their control monies of Signa." Filing 1-7 at 3. On September 22, 2023, Defendants removed the case to this Court pursuant to 28 U.S.C. § 1446, asserting diversity jurisdiction under 28 U.S.C. § 1332. Filing 1. That same day, Defendants filed their Motion to Dismiss for lack of personal jurisdiction and improper venue. Filing 2.

### II. Preliminary Matters

The Court begins with two preliminary matters. First, Defendants confusingly argue that Signa "was required to file its opposition no later than October 6, 2023," but "did not file its opposition until one week later on October 13, 2023." Filing 11 at 2. However, Defendants filed their Brief in support of their Motion to Dismiss on September 22, 2023, which is precisely 21 days before Signa filed its Brief in opposition. *See generally* Filing 3; NECivR 7.1(b)(1)(B) ("A

4

brief opposing a motion to dismiss, for judgment on the pleadings, for a more definite statement, or for summary judgment must be filed and served within 21 days after the motion and supporting brief are filed and served."). Because Signa complied with NECivR 7.1(b)(1)(B) by filing its Brief in opposition within 21 days of Defendants' Motion, the Court does not need to discuss the effect of failure to file an opposition brief. *See* NECivR 7.1(b)(1)(C) ("Failure to file an opposing brief is not considered a confession of a motion but precludes the opposing party from contesting the moving party's statement of facts.").

Second, Defendants argue that the claims against Atoka in particular should be dismissed, as follows:

> Signa's claims against Atoka are particularly weak because its conclusory allegation that "AIM and Atoka worked collectively as AIM" (Complaint ¶ 6) need not be taken as true. *Rossi v. Arch Ins. Co.*, 60 F.4th 1189, 1193 (8th Cir. 2023) (citing *Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017)) (Courts "are not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level."). There are no allegations that Atoka, specifically, took any action.

Filing 3 at 7. The Court agrees that it need not accept conclusory allegations as true but disagrees that the "claims against Atoka are particularly weak." Signa alleges, "Signa entered into a joint venture with American International Materials, LLC and Atoka International, LLC (collectively hereinafter 'AIM') for the sourcing and commercial selling of sport-hunting ammunition into the North American (U.S. and Canada) market. Signa and AIM were to share profits 50/50 and each party was to be reimbursed for certain expenses." Filing 9 at 9 (¶ 8). Thus, Signa's claims against Atoka are identical to the claims against AIM, and the Court will treat the claims as such.

## III. ANALYSIS

### A. Personal Jurisdiction

*1. The Parties' Arguments*

Defendants contend, "This Court does not have general jurisdiction over Defendants because (i) Defendants are not incorporated in Nebraska, (ii) Defendants do not maintain their principal places of business in Nebraska, and (iii) this is not an exceptional case." Filing 3 at 3. Plaintiff does not argue otherwise. *See generally* Filing 9. Instead, the parties sharply dispute whether Defendants have sufficient contacts with Nebraska to give the Court specific personal jurisdiction over Signa's claim against Defendants.

Defendants argue, "There is no specific jurisdiction over Defendants because Defendants have not purposefully availed themselves 'of the privilege of conducting activities within' Nebraska." Filing 3 at 6 (quoting *Newhard, Cook & Co. v. Inspired Life Centers, Inc.*, 895 F.2d 1226, 1228 (8th Cir. 1990)). Defendants contend that there is nothing in the record that would have given them cause to "reasonably anticipate being haled into court" in Nebraska. Filing 3 at 6 (citation omitted). To the contrary, Defendants assert, "The only allegation [in the Complaint] tying Defendants to Nebraska is that Defendants allegedly entered into [an] unwritten agreement and/or did business with a Nebraska entity." Filing 3 at 6. Anticipating Signa's response, Defendants state, "Signa may argue that the Complaint contemplates that it received communications from Defendants while its representatives were in Nebraska, but 'use of interstate mail, telephone or banking facilities, standing alone, [is] insufficient to satisfy the requirements of due process.'" Filing 3 at 7 (quoting *T.J. Raney & Sons, Inc. v. Sec. Sav. & Loan Ass'n of Salina, Kansas*, 749 F.2d 523, 525 (8th Cir. 1984)) (alteration in original). Defendants refer the Court to

the Eighth Circuit Court of Appeals' five-factor test for determining specific jurisdiction, discussed in depth below, and contend that each of the factors weighs against finding specific jurisdiction. Filing 3 at 7–9.

Signa disputes Defendants' contention that this Court lacks personal jurisdiction over Defendants. Signa argues, "Defendants maintained substantial connections in Nebraska, therefore subjecting themselves to the specific personal jurisdiction of the Court without offending due process." Filing 9 at 4. Signa points out, among other things, that "Defendants engaged in business transactions with Plaintiff for almost two (2) years"; that Signa "and Defendants paid expenses for ammunition loads"; that "Defendants received monies from Plaintiff's Nebraska bank account for reimbursable expenses pursuant to their agreement"; that "as Defendants' agent, Plaintiff received payments from over 65 online sales transactions of PPU, including payments from customers in Nebraska"; and that "Plaintiff and Defendants routinely communicated." Filing 9 at 4 (citations to record omitted). Signa contends that these facts show that the parties' "relationship was not unilateral, nor was it haphazard, accidental, or diminishing" but instead "mutually beneficial, long-standing and continuous," thereby "creat[ing] substantial connections with Nebraska . . . sufficient to subject [Defendants] to specific personal jurisdiction." Filing 3 at 5. Signa does not acknowledge the five-factor test for determining specific jurisdiction, as mentioned above. *See generally* Filing 9. Indeed, despite its acknowledgement that "Nebraska's long-arm statute . . . extends Nebraska's jurisdiction over non-residents . . . as far as the U.S. Constitution permits," Filing 9 at 3, Signa mainly cites state court decisions and does not refer the Court to any federal authority from the past three decades.

In its Reply brief, Defendants argue that "Signa's claims do not arise out of conduct directed at Nebraska" and that "the only actions that Signa alleges Defendants personally directed towards Nebraska were communications from Defendants to Signa." Filing 11 at 2–3. Defendants also attack Signa's assertion that it acted as Defendants' agent as "not only . . . a legal impossibility, [but] also a logical impossibility." Filing 11 at 5. Defendants explain,

> Specific jurisdiction must arise out of Defendants' actions within the alleged joint venture because Signa's claims arise out of the alleged joint venture. . . . If Signa performed such alleged services as Defendants' agent, they cannot also be in furtherance of the alleged joint venture arrangement because a joint venture arrangement is legally different than a principal/agent relationship.

Filing 11 at 3. Defendants conclude that "Signa's agency theory for personal jurisdiction fails because Signa's claims do not arise out of its purported activities as Defendants' agent," but instead "arise out of an alleged joint venture agreement, which requires equal control between the parties." Filing 11 at 5–6.

2. *Rule 12(b)(2) Standards*

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must plead sufficient facts to support a reasonable inference that the defendant can be subjected to jurisdiction within the state." *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015) (internal quotation marks and alteration omitted). A plaintiff bears "the burden of establishing a prima facie showing of jurisdiction." *Whaley v. Esebag*, 946 F.3d 447, 451 (8th Cir. 2020). "A prima facie showing is accomplished by pleading sufficient facts to support a reasonable inference that the defendant can be subjected to jurisdiction within the state." *Bros. & Sisters in Christ, LLC v. Zazzle, Inc.*, 42 F.4th 948, 951 (8th Cir. 2022) (internal quotation marks omitted). However, this "prima facie showing must be tested, not by the pleadings alone, but by affidavits and exhibits

supporting or opposing the motion." *Fastpath*, 760 F.3d at 820 (internal quotation marks omitted). The Court "view[s] the facts in the light most favorable to" the plaintiff. *Kendall Hunt Publ'g Co. v. Learning Tree Publ'g Corp.*, 74 F.4th 928, 930 (8th Cir. 2023). "The evidentiary showing required at the prima facie stage is minimal." *Bros. & Sisters in Christ, LLC*, 42 F.4th at 951.

"Federal courts apply the long-arm statute of the forum state to determine the existence of personal jurisdiction over the parties." *Kaliannan v. Liang*, 2 F.4th 727, 733 (8th Cir. 2021) (subsequent history and internal quotation marks omitted). Nebraska's "long-arm statute," Neb. Rev. Stat. § 25–536, permits jurisdiction to the maximum extent allowed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See Hand Cut Steaks Acquisitions, Inc. v. Lone Star Steakhouse & Saloon of Nebraska, Inc.*, 723, 905 N.W.2d 644, 661 (Neb. 2018); *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 561 (8th Cir. 2003). Thus, "the traditional due process analysis is dispositive[.]" *Kaliannan*, 2 F.4th at 733. "The relevant conduct and connections for the due process analysis depend on whether personal jurisdiction is alleged to be general or specific." *Bros & Sisters in Christ, LLC*, 42 F.4th at 951–52 (citing *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021)). In addition, "Removal, in itself, does not constitute a waiver of any right to object to lack of personal jurisdiction," *Nationwide Eng'g & Control Sys., Inc. v. Thomas*, 837 F.2d 345, 347–48 (8th Cir. 1988), where the defendants have not "file[d] a single court document following removal, and therefore cannot be deemed to have entered a general appearance." *Norsyn, Inc. v. Desai*, 351 F.3d 825, 828 (8th Cir. 2003).

3. *General Jurisdiction*

As mentioned above, Defendants argue, "This Court does not have general jurisdiction over Defendants because (i) Defendants are not incorporated in Nebraska, (ii) Defendants do not

maintain their principal places of business in Nebraska, and (iii) this is not an exceptional case." Filing 3 at 3. Signa prudently does not assert that the Court has general personal jurisdiction over Defendants. "A court with general jurisdiction may hear any claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 262 (2017) (citation and emphasis omitted). The usual "forums for [exercising general jurisdiction over] a corporation are its place of incorporation and principal place of business." *Ford Motor Co.*, 141 S. Ct. at 1024. Exercising general jurisdiction over a corporation elsewhere requires an "exceptional case" where a "corporation's affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19 (2014) (cleaned up). Defendants are Delaware LLCs headquartered in Virginia, Filing 3-1 at 1 (¶¶ 3, 6), and there are no facts suggesting this is an "exceptional case." Therefore, there is no general personal jurisdiction over Defendants in Nebraska.

    4. *Specific Jurisdiction*

In contrast to the parties' apparent agreement that general jurisdiction is not applicable, the parties vehemently disagree about whether specific personal jurisdiction applies to Defendants. "Specific jurisdiction is very different" from general jurisdiction. *Bristol-Myers*, 137 S. Ct. at 1780.

    a. Specific Jurisdiction Standards

As the Supreme Court explained in Bristol-Myers, "In order for a state court to exercise specific jurisdiction, the suit must arise out of or relate to the defendant's contacts with the forum." 137 S. Ct. at 1780. (cleaned up). Put differently, specific jurisdiction requires there to "be an

'affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State.'" *Id.* at 1781 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (alteration omitted). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers*, 137 S. Ct. at 1781. Thus, "[s]pecific jurisdiction covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Ford Motor Co.*, 141 S. Ct. at 1024.

"The contacts needed for this kind of jurisdiction often go by the name 'purposeful availment.'" *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). That is, a defendant "must take some act by which it purposefully avails itself of the privilege of conducting activities within the forum State." *Ford Motor Co.*, 141 S. Ct. at 1024 (cleaned up). Moreover, these "contacts must be the defendant's own choice and not random, isolated, or fortuitous." *Id.* at 1025 (internal quotation marks omitted). These contacts "must show that the defendant deliberately 'reached out beyond' its home—by for example, exploiting a market in the forum State or entering a contractual relationship centered there." *Id.* (internal quotation marks and alteration omitted). "The law of specific jurisdiction thus seeks to ensure that States with 'little legitimate interest' in a suit do not encroach on States more affected by the controversy." *Id.*

"In determining whether specific jurisdiction exists, [the Eighth Circuit] consider[s] the totality of the circumstances using five factors to guide [the] analysis." *Bros. & Sisters in Christ, LLC*, 42 F.4th at 952 (internal quotation omitted). These five factors are: "(1) the nature and quality of [Defendants'] contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its

residents; and (5) convenience of the parties." *Id.* (alteration in original) (quoting *Whaley*, 946 F.3d at 452). The Eighth Circuit has further explained that the first three of these factors are of "primary importance" while the "fourth and fifth factors carry less weight." *Id.* (quoting *Whaley*, 946 F.3d at 452). The Eighth Circuit has also noted that "[t]he third factor speaks to the particular question of specific jurisdiction." *Whaley*, 946 F.3d at 452.[3]

b. The Alleged Joint Venture Agreement

Before applying the five-factor test for specific jurisdiction, the Court will "first turn to the role of contracts in the personal jurisdiction analysis." *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 593 (8th Cir. 2011). The Eighth Circuit has explained,

> A contract between a plaintiff and an out-of-state defendant is not sufficient in and of itself to establish personal jurisdiction over the defendant in the plaintiff's forum state. *Burger King*, 471 U.S. at 478–79, 105 S.Ct. 2174. Personal jurisdiction, moreover, does not turn on "mechanical tests or on conceptualistic theories of the place of contracting or of performance." *Id.* at 478, 105 S.Ct. 2174 (ellipses and internal quotation marks omitted).

*K–V Pharm.*, 648 F.3d at 593. "Instead courts should consider the terms of the contract and its contemplated future consequences in determining whether personal jurisdiction over a non-resident defendant exists." *Fastpath*, 760 F.3d at 821 (quoting *K–V Pharm.*, 648 F.3d at 593). Thus, the Court must determine whether "the terms of the [alleged joint venture agreement] and its contemplated future consequences," *id.*, are such that Defendants "purposefully avail[ed]

---

[3] The Eighth Circuit's five-factor standard predates a significant number of Supreme Court decisions dealing with personal jurisdiction. *See Electro-Craft Corp. v. Maxwell Elecs. Corp.*, 417 F.2d 365, 368 (8th Cir. 1969) (observing that the Eighth Circuit previously outlined these five factors to be used in assessing personal jurisdiction in *Aftanse v. Economy Baler Company*, 343 F.2d 187 (1965)). Although this five-factor test originated before the Supreme Court more clearly distinguished general jurisdiction from specific jurisdiction in *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn.8–9 (1984), the Eighth Circuit has continued to apply this same five-factor test in assessing specific jurisdiction as recently as July 2023. *See Kendall Hunt*, 74 F.4th at 930.

[themselves] of the privilege of conducting activities within the forum State." *Ford Motor Co.*, 141 S. Ct. at 1024.

The Court concludes that Defendants' alleged entry into the joint venture agreement constitutes the purposeful availment required for the exercise of specific jurisdiction. As discussed above, Signa alleged that it and Defendants "entered into an agreement for the sourcing and commercial selling of sport-hunting ammunition into the North American (US and Canada) market." Filing 1-7 at 2 (¶ 6). "Pursuant to the agreement of the Parties, Defendants would import and transport ammunition and Plaintiff would receive, warehouse and sell said ammunition." Filing 9 at 1. Moreover, "Signa was and acted as an agent for AIM in this joint venture." As an agent of the joint venture, Signa received payments from over 65 online sales transactions of PPU, including payments from customers in Nebraska." Filing 9 at 9 (¶ 9). The Eighth Circuit has stated that a member acting in accordance with a joint venture agreement is "acting not only for himself but also on behalf of the joint venture, and it is elementary that one member of a joint venture acting for the venture is acting as the agent of the other member or members." *Pioneer Ins. Co. v. Gelt*, 558 F.2d 1303, 1310 (8th Cir. 1977). Thus, "viewing the facts in the light most favorable to" Signa, *Kendall Hunt*, 74 F.4th at 930 (citation omitted), because Signa alleged that it acted as Defendants' agent under the joint venture agreement, Signa sold ammunition to Nebraska customers for Defendants. *Pioneer*, 558 F.2d at 1310. In other words, under the "terms of the contract [between Signa and Defendants]," Signa acted as an agent of the joint venture when it made sales to customers in Nebraska—the state where Signa is incorporated and headquartered— and these sales were part of the "contemplated future consequences" of the joint venture agreement. *Fastpath*, 760 F.3d at 821; *Pioneer*, 558 F.2d at 1310.

13

Under Nebraska law, "A court may exercise personal jurisdiction over a person: (1) Who acts directly or by an agent, as to a cause of action arising from the person: (a) Transacting any business in this state; (b) Contracting to supply services or things in this state [or] (2) Who has any other contact with or maintains any other relation to this state to afford a basis for the exercise of personal jurisdiction consistent with the Constitution of the United States." Neb. Rev. Stat. 25-536. Because Signa alleges that Defendants acted by an agent and member of the joint venture to "[t]ransact any business in Nebraska" and "to supply services or things in this state," the Court "may exercise personal jurisdiction" under the jurisdictional laws of the state of Nebraska. *Id.*; *see also Pioneer*, 558 F.2d at 1310. All that remains is to determine whether exercising such jurisdiction comports with due process requirements.

### c. The Factors Favor Exercising Specific Jurisdiction

As discussed above, the Eighth Circuit uses a five-factor test to determine whether the exercise of specific jurisdiction comports with due process requirements. These five factors are: "(1) the nature and quality of [Defendants'] contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties." *Bros. & Sisters in Christ, LLC*, 42 F.4th at 952 (citation omitted). Further, the first three of these factors are of "primary importance" while the "fourth and fifth factors carry less weight." *Id.* The Court will address each factor in turn.

#### i. Factor One: The Nature and Quality of Defendants' Contacts with the Forum State

As discussed above, Signa alleged that Defendants used Signa as the member of the joint venture responsible for sales to make sales to customers in Nebraska. Filing 9 at 9 (¶ 9). In addition,

Nebraska's long-arm jurisdictional statute, Neb. Rev. Stat. 25-536, explicitly authorizes personal jurisdiction against an entity who transacts business in Nebraska through an agent. Therefore, the Court must determine whether exercising jurisdiction over Defendants pursuant to the Nebraska statute would violate due process.

The Court concludes that Signa has made the required "minimal" "evidentiary showing" that Defendants' contacts with Nebraska are of the nature and quality of contacts that permit the exercise of personal jurisdiction. *Bros. & Sisters in Christ, LLC*, 42 F.4th at 951. Defendants entered into a joint venture relationship with Signa, Filing 9 at 9 (¶ 8), and "it is elementary that one member of a joint venture acting for the venture is acting as the agent of the other member or member." *Pioneer*, 558 F.2d at 1310. Signa's responsibilities under the joint venture agreement included "receiv[ing] payments from over 65 online sales transactions of PPU, including payments from customers in Nebraska." Filing 9 at 9 (¶ 9). Signa also alleges that "Defendants benefitted from the online sales of Plaintiff when Defendants received payments from Plaintiff's Nebraska bank account." Filing 9 at 4. Thus, when Defendants entered the joint venture agreement, Defendants necessarily "contemplated [the] future consequences" that Signa would sell the ammunition on behalf of the joint venture in Nebraska, Signa's state of residency. In other words, "the terms of the [alleged joint venture agreement] and its contemplated future consequences," *id.*, are such that Defendants "purposefully avail[ed] [themselves] of the privilege of conducting activities within the forum State." *Ford Motor Co.*, 141 S. Ct. at 1024. Thus, because Defendants "deliberately reached out beyond its home by . . . exploiting a market in the forum State [and] entering a contractual relationship centered there," the joint venture's sales in Nebraska were "the defendant's own choice and not random, isolated, or fortuitous." *Id.* (cleaned up). Therefore,

15

Defendants' entry into the joint venture agreement is of the "quality and nature" of contacts that give rise to personal jurisdiction.

In addition to the joint venture agreement, Signa alleged that it exchanged hundreds of communications with Defendants. Filing 9 at 8 (¶ 10) ("Signa and AIM frequently communicated via telephone (over 680 telephone calls), zoom calls and email (over 760 emails) regarding various transactions, including banking transactions, and ammunition loads)."). While remote communications "cannot alone provide the minimum contacts required by due process," *Bell Paper Box, Inc. v. Trans W. Polymers, Inc.*, 53 F.3d 920, 923 (8th Cir. 1995), the Eighth Circuit has made clear that such communications "may be used to support the exercise of personal jurisdiction." *Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd.*, 89 F.3d 519, 523 (8th Cir. 1996). Therefore, Defendants' entry into a joint venture agreement, in conjunction with hundreds of communications with a Nebraska corporation, cause this factor to favor the exercise of personal jurisdiction.

        ii. Factor Two: The Quantity of the Contacts

Signa alleges that "frequent[ ] communicat[ion]" between it and Defendants occurred. Filing 9 at 8 (¶ 10) ("Signa and AIM frequently communicated via telephone (over 680 telephone calls), zoom calls and email (over 760 emails)."). Signa does not allege that there were multiple agreements between it and Defendants, nor does Signa indicate how many times it wired payments to Defendants. However, the fact that there are more than 1,441 contacts (680 telephone calls, 760 zoom calls, one alleged joint venture agreement, and an unspecified number of zoom calls and wire payments) between Signa and Defendants causes this factor to weigh in favor of exercising

specific jurisdiction. As discussed above, the quantity of these contacts "may be used to support the exercise of personal jurisdiction." *Digi-Tel Holdings*, 89 F.3d at 523.

### iii. Factor Three: The Relation of the Cause of Action to the Contacts

Plainly, all of Defendants' contacts with Nebraska are related to the alleged joint venture agreement which is the subject of Signa's cause of action. *See* Filing 1-7 (seeking an accounting and a declaration of existing obligations under the alleged agreement). First, the sales in Nebraska were in furtherance of the joint venture agreement between AIM and Signa to conduct North American sales of PPU. Filing 9 at 9–10 ("Signa paid AIM from Signa's Nebraska bank account, among other accounts, certain funds for prepaid ammunition loads and AIM received said funds. After Signa sold said ammunition loads via online retail stores (including sales in Nebraska), Signa would transfer certain funds from Signa's Nebraska bank account to AIM's bank account, and AIM received said funds."). Second, Signa alleges that the hundreds of communications between it and Defendants were also in furtherance of making sales and transferring money under the joint venture agreement. Filing 9 at 9 (¶ 10) ("Signa and AIM frequently communicated . . . regarding various transactions, including banking transactions, and ammunition loads."). Thus, this factor weighs in favor of exercising personal jurisdiction over Defendants.

### iv. Factor Four: The Interest in the Forum State in Providing a Forum for Its Residents

The Court reiterates that the "fourth and fifth factors carry less weight." Bros. & Sisters in *Christ, LLC*, 42 F.4th at 952. The fourth factor—the interest in the forum state in providing a forum for its residents—supports the exercise of personal jurisdiction given that Signa is allegedly a

Nebraska corporation. Filing 1-7 at 1 (¶ 1). States "obviously ha[ve] an interest in providing a forum for resident corporations." See *K-V Pharm. Co.*, 648 F.3d at 595.

          v. Factor Five: Convenience of the Parties

The Court presumes that Signa brought this action in a Nebraska court because Nebraska courts are convenient to Signa, as a Nebraska corporation. Defendant states only, "Defense of such a suit would place an unreasonable burden on Defendants" because "Defendants have not directed any business activities toward Nebraska." Filing 3 at 9. Because the Court must view the evidence in a light most favorable to Signa, *Kendall Hunt*, 74 F.4th at 930 (citation omitted), and because Defendants do not allege any facts bearing on convenience, the Court will assume that this factor weighs in favor of exercising personal jurisdiction over Defendants.

          vi. Weighing the Factors

All factors favor the exercise of personal jurisdiction over Defendants for the claims at issue here. Defendants' contacts with the State of Nebraska include entering into a joint venture agreement which authorized Signa to make sales to Nebraska customers on Defendants' behalf, and Defendant received a share of those profits. In addition, Defendants exchanged numerous communications and money transfers with Signa, a Nebraska corporation. All of these contacts are directly related to the alleged joint venture agreement at issue in this case. Therefore, the Court has personal jurisdiction over Defendants for the specific claims at issue in this case. Accordingly, Defendants Rule 12(b)(2) Motion to Dismiss for lack of personal jurisdiction is denied.

      B. Venue

Defendants also seek to dismiss Signa's claims for improper venue pursuant to Rule 12(b)(3). *See* Filing 2. Defendants argue that venue is improper because "Defendants' alleged

actions or inactions occurred in Virginia," not Nebraska. Signa responds that "[b]ecause Defendants have the capacity to be sued and have subjected themselves to the personal jurisdiction of Nebraska courts, venue in this matter is proper." Filing 9 at 6.

The federal venue statute provides,

**(b) Venue in general.**--A civil action may be brought in--

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). The statute also defines "residency," as follows:

**(c) Residency.**--For all venue purposes--

. . .

(2) an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question and, if a plaintiff, only in the judicial district in which it maintains its principal place of business[.]

28 U.S.C. § 1391(c)(2).

As discussed above, the Court has determined that there is specific personal jurisdiction over Defendants for the claims in Signa's Amended Complaint. Accordingly, for "venue purposes," Defendants are "deemed to reside" in the District of Nebraska because Defendants are "subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). Because Defendants are "deemed to reside" in Nebraska for venue purposes in this

19

case, and "civil action[s] may be brought in . . . a judicial district in which any defendant resides," this Court is a proper venue under 28 U.S.C. § 1391(b)(1). Therefore, Defendants' Rule 12(b)(3) Motion to Dismiss for improper venue is denied.

### IV. CONCLUSION

For these reasons, the Court has personal jurisdiction over Defendants for the claims at issue here. Venue in this Court is also proper. Accordingly,

IT IS ORDERED that Defendants' Motion to Dismiss, Filing 2, is denied.

Dated this 8th day of December, 2023.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge