IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SIGNA DEVELOPMENT SERVICES, INC., a Nebraska corporation;<br><br>Plaintiff,<br><br>vs.<br><br>AMERICAN INTERNATIONAL MATERIALS, LLC, a Delaware limited liability company; and ATOKA INTERNATIONAL, LLC, a Delaware limited liability company;<br><br>Defendants. | 8:23CV415<br><br>ORDER |

    This matter comes before the court on Defendants American International Materials, LLC ("AIM") and Atoka International, LLC ("Atoka") (collectively "Defendants") Motion to Compel. (Filing No. 73). Defendants move to compel Plaintiff's Rule 26(a) Initial Disclosures; Interrogatory Nos. 3, 4, 5, 17, 19, 21, and 25;[1] and Requests for Production Nos. 5 and 22. For the reasons explained below, the motion is granted in part and denied in part.

## BACKGROUND

    Plaintiff Signa Development Service, Inc. ("Signa") filed suit against Defendants on March 29, 2023, in state court in Douglas County, Nebraska. (Filing No. 1-3). Plaintiff later filed an amended complaint, which is the operative complaint in this case. (Filing No.

---

[1] The parties also briefly addressed Interrogatory No. 27, but Plaintiff recognized the response was an "unintentional drafting error" resulting in a duplicative answer and has since addressed the issue. Because Defendants do not raise the issue further in its reply brief, the court accepts this Interrogatory is no longer contested.

1-7). Defendants removed the suit to federal court on September 22, 2023. (Filing No. 1). According to the complaint, Plaintiff entered into an oral contract with Defendants in July of 2021, agreeing to sell sport-hunting ammunition imported by Defendants. (Filing No. 1-7). Signa and AIM purportedly agreed to split profits 50/50 after reimbursable expenses. (Filing No. 1-7). Plaintiff alleges that "[i]n or around March 2023, Plaintiff, for the first time and contrary to the previous representations of Defendants, learned that Defendants were not the exclusive importers of certain ammunition loads and may have been inflating importing and transportation expenses." (Filing No. 9). Plaintiff further alleges that "Defendants were not properly accounting for ammunition loads and not properly distributing profits to Plaintiff," which caused "the business relationship . . . to end." (Filing No. 9). Defendants contest whether a business relationship was ever formed. Specifically, Defendants allege that they "discussed entering into a joint venture in which the parties would share the costs of buying imported ammunition and shipping it to customers, and where they would also share in the profits from those sales," but "AIM and Signa did not enter into a joint venture because Signa was unwilling to share in the costs to import ammunition into the United States and ship it to customers." (Filing No. 3-1).

On February 23, 2024, the court entered a Final Progression Order setting the dates to complete fact discovery, depositions, and other pretrial deadlines. The court previously ordered mandatory disclosures be served by February 22, 2024. (Filing No. 20). The parties later submitted a joint motion to extend the deadlines by ninety days, which was adopted by the court on June 12, 2024. (Filing No. 34). Just two months later, Defendants filed their first Motion to Compel (Filing No. 36), alleging deficiencies in Plaintiff's Rule 26(a) disclosures and responses to Defendants' written discovery requests. The court at that time denied the motion for failure to comply with the Court's Final Progression Order, which provides "A motion to compel…shall not be filed without first contacting the chambers of the undersigned magistrate judge to set a conference for discussing the parties' dispute." (Filing No. 40). The parties then submitted a Joint Stipulation regarding Plaintiff's Rule 26(a) Disclosures, Interrogatory Responses and Document Production, which was adopted by the court. (Filing No. 45). Specifically, the parties agreed that on or before September 13, 2024, Plaintiff would supplement its Rule 26(a) disclosures and responses to Defendants' Interrogatories Nos. 3, 4, 5, 17, 19, 21, as well as Request for Production No. 5.

Plaintiff filed a certificate of service on September 13, 2024, representing that it served supplemental document production Signa_Supp_000001 through Signa-Supp-008960 via electronic file. (Filing No. 47). On October 3, 2024, Defendant filed a Motion

for Sanctions (Filing No. 51), alleging that Plaintiff failed to supplement its responses as agreed upon in the Joint Stipulation. The court denied the motion as premature because there was no prior order compelling discovery. (Filing No. 67). The court then directed the parties to continue to meet and confer regarding the ongoing discovery dispute "and take appropriate actions in accordance with the Local Rules, if necessary." (*Id.*). On December 26, 2024, the parties filed another Joint Motion to Amend Final Progression Order and agreed to extend the deadline to complete written discovery and to file motions to compel an additional ninety days, (Filing No. 71). That request was approved by the court that same day (Filing No. 72). Defendants then filed this Motion to Compel just four days later, again without first contacting the undersigned magistrate judge to set a conference for discussing the parties' dispute in contravention of the progression order. (Filing No. 73). Plaintiff served supplemental responses to the disputed discovery with its response brief. (Filing No. 81).

## LEGAL STANDARD

The Federal Rules of Civil Procedure allow for discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The Eighth Circuit Court of Appeals explained, "[t]he purpose of our modern discovery procedure is to narrow the issues, to eliminate surprise, and to achieve substantial justice." *Mawby v. United States*, 999 F.2d 1252, 1254 (8th Cir. 1993), quoting *Greyhound Lines, Inc. v. Miller*, 402 F.2d 134, 143 (8th Cir. 1968).

All parties are entitled reasonable access to "all evidence bearing on the controversy between them, including that in control of adverse parties. This requires the absolute honesty of each party in answering discovery requests and complying with discovery orders." *Litton Systems, Inc. v. American Tel. & Tel. Co.,* 91 F.R.D. 574, 576 (S.D.N.Y.1981). Complete and accurate responses to discovery are required for the proper functioning of our system of justice. *Averbach v. Rival Mfg. Co.,* 879 F.2d 1196, 1201 (3d Cir.1989). The parties have a duty to provide true, explicit, responsive, complete and candid answers to discovery, *Dollar v. Long Manufacturing N.C., Inc.,* 561 F.2d 613, 616 (5th Cir.1977), and their attorneys have a continuing duty to advise their clients of their duty to make honest, complete, non-evasive discovery disclosures, as well as the spectrum of sanctions they face for violating that duty. *See* Fed.R.Civ.P. 26(g). Providing false or incomplete discovery responses violates the Federal Rules of Civil Procedure and subjects the offending party and its counsel to potential sanctions. *Hogue v. Fruehauf Corp.,* 151 F.R.D. 635, 637 (N.D.Ill.1993).

3

Federal Rule of Civil Procedure 33(d) permits a party to respond to interrogatories by producing documents when certain requirements are satisfied. If a party responds to interrogatories pursuant to Rule 33(d), it must specify the documents from which the responses to the interrogatories can be derived in sufficient detail to enable the interrogating party to locate the documents as readily as the responding party could. Fed.R.Civ.P. 33(d). It is not sufficient for a responding party to simply direct the interrogating party to a mass of business records. *Id.* (Advisory Committee Notes (1980 Amendment)); *see also In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 320, 326 (N.D.Ill.2005). Courts have found that when voluminous documents are produced under Rule 33(d), they must be accompanied by indices to guide the interrogating party to the responsive documents. *O'Connor v. Boeing N. Am., Inc.*, 185 F.R.D. 272, 278 (C.D.Cal.1999).

## ANALYSIS

Defendants seek an order (1) compelling Signa to supplement its Rule 26(a) disclosures describing "all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control" and disclosing "each individual likely to have discoverable information" and a description of such relevant information; (2) compelling Signa to fully respond to Defendants' First Set of Interrogatories Nos. 3, 4, 5, 17, 19 and 21; (3) compelling Signa to fully respond to Defendants' Second Set of Request for Production No. 5 in its native file format; and (4) awarding attorneys' fees incurred in conjunction with the Motion to Compel, as well as evidentiary exclusions at trial.

**1.   Initial Disclosures**

Under Fed.R.Civ.P. 26(a)(1)(A)(i), the parties in a lawsuit are required, without awaiting a discovery request, to provide to the other parties "the name and, if known, the address and telephone number of each individual likely to have discoverable information— along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment[.]" As for documents, a party must provide a copy – or a description by category and location – of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment. Fed.R.Civ.P 26(a)(1)(A)(iii).

Defendants argue that Plaintiff's initial disclosures did not adequately identify the documents or witnesses Signa intended to rely on, thereby leaving Defendants to guess

4

which witnesses or documents were more critical for depositions and trial preparation. Plaintiff previously stipulated that its initial disclosures were deficient, meaning the court need not analyze that issue. (Filing No. 45).

The record shows that Plaintiff supplemented its disclosures on or around September 13, 2024, wherein it disclosed documents bates-labeled Signa-Supp-0000001 through Signa_Supp_008960 via electronic file. (Filing No. 47). Plaintiff then provided supplemental disclosures after the motion to compel was filed which identified and disclosed additional documents and identified the categories of information each disclosed witness may provide. (Filing No. 84-2). Defendants do not address the issue any further in their reply brief, other than to criticize the timing of the supplemental disclosures. (Filing No. 83).

Regardless, the court finds that the supplemental initial disclosures meet the minimum requirements of Rule 26(a) and are sufficient. Therein, Plaintiff identified witnesses who may possess relevant information and the subject matter of each witness. (Filing No. 77-1(A)). The supplemental initial disclosures also now identify six different categories of documents, an improvement over the three very broad references to documents made in the initial disclosures. While there are no bates numbers identified, Plaintiff now represents that it has disclosed more than 9,000 pages of documents in this matter relating to the purchase and shipping of ammunition, correspondence and documents between the parties and exporters, as well as damages calculations.

**2.    Interrogatories**

Defendants next allege deficiencies of Plaintiff's Responses to their Interrogatory Nos. 3, 4, 5, 17, 19, and 21. Again, plaintiff previously stipulated that its responses to those interrogatories were deficient, meaning the analysis now is whether the supplemental responses provided after the motion to compel are still inadequate. The interrogatories will be addressed in turn.

**Interrogatory Nos. 3, 4 & 5**

Through Interrogatory Nos. 3, 4, and 5, Defendants generally request the identity of documents and conversations that make up asserted contracts between the parties. In particular:

> **Interrogatory No. 3** - State whether there is any document(s) that makes up a part or the whole of the Contract between Signa and AIM / Atoka.

**ANSWER:** Emails between Paul Baman Rusby and Thomas Schmidt. Payments by Plaintiff to Defendants. Please see Responses to Request for Production of Documents Nos. 1 and 19 served contemporaneously herewith.

**SUPPLEMENTAL ANSWER:** Signa incorporates the deposition testimony of its corporate representative, Thomas Schmidt, and the exhibits therein by reference which relate to the discussions between the parties regarding the joint venture. Further answering, Signa states that the joint venture was further documented through the following email exchanges between Mr. Schmidt and Mr. Rusby, bates-labeled as SIGNA_SUPP_001831 – 1832 and SIGNA_SUPP_001963 – 1965.

**Interrogatory No. 4** - If there are document(s) that make up a part of the whole of the Contract between Signa and AIM/Atoka, identify each document that makes up a part or the whole of the Contract between Signa and AIM / Atoka

**ANSWER:** Non-privileged documents responsive to this request will be produced.

**SUPPLEMENTAL ANSWER:** Signa incorporates the deposition testimony of its corporate representative, Thomas Schmidt, and the exhibits therein by reference which relate to the discussions between the parties regarding the joint venture. Further answering, Signa states that the joint venture was further documented through the following email exchanges between Mr. Schmidt and Mr. Rusby, bates-labeled as SIGNA_SUPP_001831 – 1832 and SIGNA_SUPP_001963 – 1965.

**Interrogatory No. 5** - Describe each conversation between you and AIM/Atoka in which the proposed terms of the Contract were discussed prior to the Contract being formed.

**ANSWER:** Please see Answer to Interrogatory No. 4 above. In addition, Plaintiff and AIM/Atoka had several in person and telephonic conversations prior to the Contract being formed wherein both parties discussed various aspects of the Contract and the terms eventually set forth by the parties.

> **SUPPLEMENTAL ANSWER:** Signa incorporates the deposition testimony of its corporate representative, Thomas Schmidt, and the exhibits therein by reference which relate to the discussions between the parties regarding the joint venture. Further answering, Signa states that the joint venture was further documented through the following email exchanges between Mr. Schmidt and Mr. Rusby, bates-labeled as SIGNA_SUPP_001831 – 1832 and SIGNA_SUPP_001963 – 1965.

(Filing No. 84-3).

Defendants are correct that general responses to document production are insufficient answers to Interrogatories. *See, e.g. Graske v. Auto-Owners Ins. Co.*, 647 F. Supp. 2d 1105, 1108-09 (D. Neb. 2009) (holding that interrogatory responses that "simply directed plaintiff to one or more of the files of documents…are deficient" absent "any indices or other tool to guide plaintiffs to the responsive documents"). Defendants also argue that Plaintiff must answer interrogatories "with specificity and without reference to [its] deposition testimony generally [.]" *See Martin v. Easton Pub. Co.*, 85 F.R.D. 312, 315 (E.D. Pa. 1980).

Here, it appears Plaintiff disclosed a significant amount of documents on or around September 13, 2024, including bates-labeled documents 000001 through 008960. There is no indication as to whether the documents contained an index, how the documents may be catalogued, or whether the documents are searchable. In its supplemental responses noted above, Plaintiff does identify particular documents responsive to the request including those bates-labeled as "SIGNA_SUPP_001831 – 1832 and SIGNA_SUPP_001963 – 1965." (Filing No. 84-3). The documents referenced are not voluminous and appear to enable the interrogating party the ability to locate the documents as readily as Plaintiff can. *See* Fed.R.Civ.P. 33(d). However, the court does find that the general references to Mr. Schmidt's deposition testimony to be inadequate and grants the motion to compel on this issue. Plaintiff is ordered to identify the particular portions of Mr. Schmidt's deposition testimony relied upon in response to each interrogatory and also identify which "exhibits therein" it references.

### Interrogatory Nos. 17 & 19

Defendants argue that Interrogatory No. 17 and 19 are inadequate because it is impossible to discern which documents Signa identifies are responsive to the request made. Those interrogatories requested the following:

**Interrogatory No. 17** - Identify the transactions whereby you paid $2,499,686.90 to AIM/Atoka for ammunition loads to be imported and sold to customers.

**ANSWER:**

| Date | Amount |
| --- | --- |
| 10/29/2021 | $0.62 |
| 11/1/2021 | $50,496.30 |
| 11/19/2021 | $8,665.80 |
| 12/14/2021 | $12,618.89 |
| 1/28/2022 | $501,040.00 |
| 1/28/2022 | $20,817.35 |
| 2/25/2022 | $45,030.41 |
| 3/18/2022 | $62,491.16 |
| 3/24/2022 | $200,000.00 |
| 4/5/2022 | $100,000.00 |
| 4/12/2022 | $79,360.00 |
| 4/14/2022 | $80,000.00 |
| 4/22/2022 | $100,000.00 |
| 4/27/2022 | $350,000.00 |
| 4/28/2022 | $200,000.00 |
| 5/19/2022 | $300,000.00 |
| 6/23/2022 | $189,166.47 |
| 7/1/2022 | $200,000.00 |

**SUPPLEMENTAL ANSWER:** Signa incorporates the deposition testimony of its corporate representative, Thomas Schmidt, and the exhibits therein by reference which specifically address this interrogatory. Further answering, Signa states that the transactions representing the purchase of PPU ammunition are described within weekly sale and inventory reports from the various warehouses storing the ammunition, bates-labeled as SIGNA_SUPP_002007;SIGNA_SUPP_003679;SIGNA_SUPP_005127; SIGNA_SUPP_005314;SIGNA_SUPP_005368;SIGNA_SUPP_005376; SIGNA_SUPP_005397;SIGNA_SUPP_005423;SIGNA_SUPP_005427;

SIGNA_SUPP_005429;SIGNA_SUPP_005491;SIGNA_SUPP_005503; SIGNA_SUPP_005512;SIGNA_SUPP_005702;SIGNA_SUPP_006331; SIGNA_SUPP_006376;SIGNA_SUPP_006378;SIGNA_SUPP_006496; SIGNA_SUPP_007407;   SIGNA_SUPP_007491;SIGNA_SUPP_007885; and SIGNA_SUPP_007886.

**Interrogatory No. 19** - Identify every time you released ammunition that is the subject of this lawsuit from the Stryker Warehouse or any other location without AIM/Atoka's approval.

**ANSWER:** AIM/Atoka's approval was not a requirement for the release of ammunition. All ammunition was pre-sold.

**SUPPLEMENTAL ANSWER:** Although Signa stands by its assertion that AIM/Atoka's approval was not a requirement for the release of ammunition, Signa incorporates the deposition testimony of its corporate representative, Thomas Schmidt, and the exhibits therein by reference which specifically address this interrogatory. Further answering, Signa states that the transactions representing the release of PPU ammunition are described within weekly sale and inventory reports from the various warehouses storing the ammunition, bates-labeled as SIGNA_SUPP_002007; SIGNA_SUPP_003679; SIGNA_SUPP_005127; SIGNA_SUPP_005314; SIGNA_SUPP_005368; SIGNA_SUPP_005376; SIGNA_SUPP_005397; SIGNA_SUPP_005423; SIGNA_SUPP_005427; SIGNA_SUPP_005429; SIGNA_SUPP_005491; SIGNA_SUPP_005503; SIGNA_SUPP_005512; SIGNA_SUPP_005702; SIGNA_SUPP_006331; SIGNA_SUPP_006376; SIGNA_SUPP_006378; SIGNA_SUPP_006496; SIGNA_SUPP_007407; SIGNA_SUPP_007491; SIGNA_SUPP_007885; and SIGNA_SUPP_007886.

(Filing No. 84-3). Plaintiff previously stipulated that its initial responses were deficient. The supplemental responses are still inadequate because they require Defendants to divine what particular information in the documents is responsive to the request. If a party responds to interrogatories pursuant to Rule 33(d), it must specify the documents from which the responses to the interrogatories can be derived *in sufficient detail* to enable the

9

interrogating party to locate the information as readily as the responding party could. Fed.R.Civ.P. 33(d). It is not sufficient for a responding party to simply direct the interrogating party to business records. *Id.* (Advisory Committee Notes (1980 Amendment)); see also *In re Sulfuric Acid Antitrust Litig.,* 231 F.R.D. 320, 326 (N.D.Ill.2005).

While it again appears Plaintiff previously produced approximately 9,000 pages of business records, Plaintiff's discovery responses refer to documents containing miscellaneous labels and markers, without aiding the Defendants in ascertaining the response to the question. For example, there are 18 entries on the table set forth in Signa's answer to Interrogatory No. 17, however Plaintiff's supplemental answer to Interrogatory No. 17 identifies 22 different documents, which do not correlate with many of the dates identified in the table. (Filing No. 84-3). Plaintiff argues that Defendants already have this information because it was turned over during the settlement negotiations. However, an objection based on information that the moving party is already in possession of documents is insufficient. A party is required to produce documents in its possession, custody, or control, regardless of whether it believes the requesting party already has those documents. See *Ragan v. Jeffboat,* LLC, 149 F.Supp.2d 1053, 1061 (S.D.Ind.2001); *Walt Disney Co. v. DeFabiis,* 168 F.R.D. 281, 284 (C.D.Cal.1996); *Cook v. Rockwell Intern. Corp.,* 161 F.R.D. 103, 105 (D.Colo.1995); *Fort Washington Resources, Inc. v. Tannen,* 153 F.R.D. 78, 79 (E.D.Pa.1994) ("[I]t is not a bar to the discovery of relevant material that the same material may be in the possession of the requesting party or obtainable from another source.")

Because Plaintiff failed to satisfy the requirements of Rule 33, Plaintiff is ordered to supplement its response to Interrogatory No. 17 to clarify transaction history as it relates to the chart in Signa's original answer, as well as clarifying which transactions were released from the warehouse specified in response to Interrogatory No. 19.

**Interrogatory Nos. 20 & 21**

Interrogatory No. 20 asks, "[a]s of the date of your response to this Interrogatory, has any of the ammunition that is the subject of this lawsuit been sold to third parties." (Filing No. 77-1, Exhibit 1-C). Interrogatory No. 21 then follows:

> **Interrogatory No. 21** - If the answer to Interrogatory No. 20 is yes, identify the dates of sale, the amounts sold, the sales prices, and the persons to whom [certain] ammunition was sold."

10

> **ANSWER:** Plaintiff objects to this Interrogatory. Plaintiff mitigated its damages by liquidating the remaining loads of ammunition during a time when the price of ammunition was at a market low.
>
> **SUPPLEMENTAL ANSWER:** Signa states that it sold the remaining PPU ammunition to Lucky Gunner as represented in Signa's profit and loss details for 2023, bates labeled as SIGNA_SUPP_009098.

(Filing No. 84-3). Defendants argue the response remains deficient because it fails to mention "all the ammunition that is the subject of the lawsuit," and Plaintiff addresses only the "remaining PPU ammunition" it sold off. They also allege that the referenced profit and loss statement for 2023 only has one figure for each month in 2023, and "fails to include the dates of sale, the amounts sold, and the sale prices." *Id.*

The court finds that both the interrogatory and the responses could be clearer, but will grant the motion to compel and require Plaintiff to further supplement. *See Speed RMG Partners, LLC v. Arctic Cat Sales, Inc.*, (2021 WL 5087362 *5 (D. Minn. Jan. 5, 2021) ("poorly drafted interrogatories beget poorly drafted responses"). It appears Defendants are asking whether any of the ammunition at issue in the complaint was ever sold to third parties, and if so to whom, when, amounts sold, and sales price. Plaintiff is required to answer those questions directly.

3.   **Request for Production of Documents**

Defendants also argue deficiencies remain as to Request for Production of Documents No. 5 and No. 22. Request No. 5 requests "all documents, correspondence, and ESI that are identified in or were referenced to complete your Answers to the Interrogatories served contemporaneously herewith." (Filing No. 84-4). Defendants argue that Plaintiffs fail to identify specific documents that it referenced in response to Interrogatory No. 18 and instead refer generally to Plaintiff's entire production. Interrogatory No. 18 states:

> **Interrogatory No. 18** – State the complete factual basis for your claim that you are entitled to $1,451,818.40 in reimbursable expenses from AIM/Atoka.
>
> **ANSWER:** Plaintiff prepaid for shipments and has documentation of said payments. Based upon the currency exchange rate fluctuation from September 2021 to November 2022, Plaintiff has overpaid by approximately $1,247,094.00. Currency exchange rate fluctuations are publicly available

11

and Plaintiff has documentation of the same. Plaintiff overpaid profits to AIM/Atoka by approximately $141,622.58. Plaintiff has documentation of said overpayments. Plaintiff is owed reimbursements for the following expenses: shipping fees, credit card fees, ammo cans and sales discounts of approximately $218,713.12. Plaintiff has documentation of said expenses.

(Filing No. 39 at p. 41-42). Defendants argue the response to Request No. 5 is deficient because in its verified response to Interrogatory No. 18, Plaintiff states it has documentation of overpayments and documentation of currency exchange rate fluctuations. The court agrees. If the documents are contained in the nearly 9000 pages of discovery Plaintiff turned over, it must identify those to Defendants. See *Graske*, 647 F. Supp. 2d at 1108 (responses that generally indicate mass production of documents is responsive to each request is deficient under Rule 34). If those documents have not yet been produced, Plaintiff is ordered to produce them.

Request for Production No. 22 states:

> **REQUEST NO. 22:** All profit and loss details for Signa/AmSport from September 2021 through the present. (Sample profit and loss detail is attached as Exhibit A).
>
> **RESPONSE:** Non-privileged documents responsive to this request will be produced.
>
> **SUPPLEMENTAL RESPONSE:** All non-privileged documents responsive to this request in Signa's possession, custody, or control have been produced. Further answering, Signa states that the attached profit and loss detail referred to as "Exhibit A" represents a time when Signa was a startup company with significantly fewer transactions than in subsequent years. After 2021, profit and loss details were tracked on a month-by-month basis rather than a day-by-day time period due to an increase in transactions. Furthermore, Signa has not yet completed its profit and loss details for 2024.

(Filing No. 84-6). Defendants similarly argue that Plaintiff failed to identify which of the approximately 9000 pages of discovery is specifically responsive to the request. The court agrees. Plaintiff must identify, with specificity, which documents are responsive to the request.

Finally, Defendants argue that Plaintiff failed to comply with Fed.R.Civ.P 34(b)(1)(C) and 34(b)(2)(E)(ii) by failing to produce its electronically stored information

12

in native file format. Plaintiff responded that it sought third party assistance in retrieving emails and turned over printed copies of the documents responsive to Defendant's request. It further represents that many emails were located on third party servers outside of Signa's control. Defendant does not address the issue any further in the reply brief. Pursuant to Fed.R.Civ.P. 26(b)(2)(B) "a party need not provide discovery of electronically stored information from sources that the party identified as not reasonably accessible because of undue burden or cost. On motion to compel discovery . . ., the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost." That showing has not been made. Plaintiff therefore shall produce (and reproduce as is necessary) electronically stored information responsive to discovery requests in their native filed format as already stipulated. (Filing No. 45).

**4.   Sanctions**

Defendants request sanctions under Federal Rules of Civil Procedure 37(a)(5)(A), 37(b)(2), 37(c)(1). Defendants not only seek an award of attorneys' fees, but also an order barring Plaintiff from introducing certain evidence and testimony. Rule 37(a)(5)(A) states, in relevant part, that if the Court grants a motion to compel discovery or the requested discovery is produced after the motion is filed, then the Court must award the movant its "reasonable expenses in making the motion." The Court can require the litigant, his attorney, or both to pay any such award. Fed. R. Civ. P. 37(a)(5)(A). The Court, however, will not award reasonable expenses if: "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(i)–(iii).

There is no bright line standard for "substantial justification," and courts must use discretion when deciding whether opposition to a motion to compel is substantially justified. *Cuno, Inc. v. Pall Corp.,* 117 F.R.D. 506, 509 (E.D.N.Y.1987); *see Alvarez v. Wallace,* 107 F.R.D. 658, 662 (W.D.Tex.1985). "Whether opposition to a motion to compel is substantially justified depends on the circumstances of the particular case." *Transcontinental Fertilizer Co. v. Samsung Co., Ltd.,* 108 F.R.D. 650, 653 (E.D.Pa.1985). The United States Supreme Court stated that under Rule 37, "[substantially justified] has never been described as meaning 'justified to a high degree,' but rather has been said to be satisfied if there is a 'genuine dispute,' ... or 'if reasonable people could differ as to [the appropriateness of the contested action]....'" *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 2550 (1988).

Defendant's request to exclude evidence will be denied. That remedy is an extreme one and should be used sparingly. *See ELCA Enters. v. Sisco Equip. Rental & Sales*, 53 F.3d 186, 190 (8th Cir. 1995); *Mills v. Des Arc Convalescent Home*, 872 F.2d 823, 826 (8th Cir. 1989) (holding that exclusion of evidence should seldom be granted unless bad faith is involved). "As one commentator has concluded, 'many judges are reluctant to exclude evidence that is important to the merits of the case without a showing of substantial and largely irremedial prejudice, as well as bad faith, willfulness or substantial fault.'" *S&S Comm. v. Local Exchange Carriers Ass'n*, 2005 WL 2897045 *3 (D. S.D. Nov. 3, 2005) (citing *Moore's Federal Practice*, §37,60(2)(b) (Matthew Bender 3d ed.)). That showing has not been made here.

While a much closer call, the court also declines to award attorney fees and costs at this time, finding the exceptions under Fed.R.Civ.P. 37(a)(5)(A)(i) and (iii) apply. In particular, Defendant twice ignored the progression order and filed its motion to compel without first requesting a discovery dispute conference. While Defendant believes the court gave it leave to skip that process and move directly to a motion to compel, the court instead directed the parties to continue to meet and confer regarding the ongoing discovery dispute "and take appropriate actions in accordance with the Local Rules, if necessary." (Filing No. 67). NECivR 7.1(j) requires parties to engage in personal consultation before filing any discovery motion, which requires "sincere attempts to resolve differences" by "person-to-person conversation, either in person or on the telephone."

Here, the parties held a meet and confer conference on December 17, 2024. Shortly thereafter, it appears Plaintiff's counsel suffered a death in the family near the time of the meet and confer, which Defendants acknowledged. (Filing No. 77-1 at p. 113). Defense counsel then suggested that a motion to compel would be necessary only if the then-December 30, 2024 deadline was not moved. (*Id.*). The motion to compel deadline was moved to March 31, 2025 by way of stipulation of the parties filed December 26, 2024 (Filing No. 71 and 72). But just a few days later, Defendants still elected to file this motion to compel on December 30, 2024, without any additional conferral with opposing counsel or the court. Notably, the court's Second Amended Progression Order entered on December 26, 2024, included the following re-iteration:

> **Note:** A motion to compel, to quash, or for a disputed protective order shall not be filed without first contacting the chambers of the undersigned magistrate judge to set a conference for discussing the parties' dispute.

(Filing No. 71 and 72, emphasis in original).

For these reasons, fees and costs will not be awarded at this time. The court, however, will reserve the right to grant such relief for future discovery violations at issue here should they occur.

Accordingly, IT IS ORDERED that Defendants Motion to Compel, Filing No. 73, is granted in part and denied in part, as follows:

1. Plaintiff shall supplement its responses to Interrogatory Nos. 3, 4, and 5 to identify the particular portions of Mr. Schmidt's deposition testimony relied upon in response to each interrogatory and also identify which "exhibits therein" it references.
2. Plaintiff shall supplement its response to Interrogatory No. 17 to clarify transaction history as it relates to the chart in Signa's original answer.
3. Plaintiff shall supplement its response to Interrogatory No. 19 to clarify which transactions were released from the Stryker Warehouse.
4. Plaintiff shall supplement its responses to Request for Production of Documents Nos. 5 and 22 to specifically identify which documents are responsive to each requested document production.
5. Plaintiff shall produce (and reproduce as is necessary) electronically stored information responsive to discovery requests in their native file format as previously stipulated. (Filing No. 45).

Plaintiff shall have **fourteen (14) days** from the date of this order to comply.

Dated this 9th day of April, 2025.

BY THE COURT:

s/ Ryan C. Carson
United States Magistrate Judge