IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SIGNA DEVELOPMENT SERVICES, INC., a Nebraska corporation;<br><br>                  Plaintiff/Counterclaim Defendant,<br><br>  vs.<br><br>AMERICAN INTERNATIONAL MATERIALS, LLC, a Delaware limited liability company; and ATOKA INTERNATIONAL, LLC, a Delaware limited liability company;<br><br>                  Defendants/Counterclaim Plaintiffs,<br><br>  vs.<br><br>THOMAS SCHMIDT,<br><br>                  Counterclaim Defendant. | 8:23CV415<br><br><br>ORDER |

This matter comes before the court on Plaintiff's Motion to Extend Progression Deadlines (Filing No. 103) and Motion for Leave to File Second Amended Complaint. (Filing No. 109). For the following reasons, the Motion for Leave to File Second Amended Complaint is denied and the Motion to Extend is granted in part and denied in part.

I. BACKGROUND

Plaintiff Signa Development Services, Inc. ("Signa") was initially represented by attorney James Place, who filed suit against Defendants on March 29, 2023, in state court in Douglas County, Nebraska. (Filing No. 1-3). Plaintiff filed an amended complaint on August 15, 2023, which is the current operative complaint in this case. (Filing No. 1-7).

After being served the amended complaint on August 24, 2023, Defendants removed the suit to federal court on September 22, 2023. (Filing No. 1).

According to the amended complaint, Plaintiff entered into an oral contract with Defendants in July of 2021, agreeing to sell sport-hunting ammunition imported by Defendants. (Filing No. 1-7). Signa and AIM purportedly agreed to split profits 50/50 after reimbursable expenses. (Filing No. 1-7). Plaintiff alleges that "[i]n or around March 2023, Plaintiff, for the first time and contrary to the previous representations of Defendants, learned that Defendants were not the exclusive importers of certain ammunition loads and may have been inflating importing and transportation expenses." (Filing No. 9). Plaintiff further alleges that "Defendants were not properly accounting for ammunition loads and not properly distributing profits to Plaintiff," which caused "the business relationship . . . to end." (Filing No. 9).

Defendants contest whether a business relationship was ever formed. Specifically, Defendants allege that they "discussed entering into a joint venture in which the parties would share the costs of buying imported ammunition and shipping it to customers, and whether they would also share in the profits from those sales," but "AIM and Signa did not enter into a joint venture because Signa was unwilling to share in the costs to import ammunition into the United States and ship it to customers." (Filing No. 3-1). Plaintiff plead its first cause of action for a full accounting of all monies owed from the Defendants and its second cause of action for a declaratory judgment of the nature of the relationship between the parties and their respective duties and obligations therein. (Filing No. 1-7).

After the District Court denied Defendants' initial motion to dismiss, the presiding magistrate judge entered a Final Progression Order on February 24, 2024, which outlined the progression of discovery in this case, including setting a deadline to amend the pleadings for May 20, 2024. After those deadlines were set, the parties initiated discovery. On April 15, 2024, attorneys Michael Brown and Joseph Kavan entered an appearance on behalf of Plaintiff, with Mr. Place also remaining as counsel of record. Case progression was briefly paused while the parties pursued settlement, which was not successful. The

final progression order was amended on June 12, 2024, and again on December 26, 2024. (Filing No. 34; Filing No. 72). While both amended Final Progression Orders extended certain discovery deadlines, neither addressed the deadline to amend pleadings. On August 8, 2024, Defendant moved for an extension of its deadline only as to amending pleadings or adding parties, with Plaintiff's consent (Filing No. 42), which the court granted. (Filing No. 43). Defendants timely filed a motion to amend its answer and counterclaims prior to the new deadline. (Filing No. 48). The court granted the Defendant's motion to amend on December 10, 2024, and Defendants' Amended Answer was filed ten days later. (Filing Nos. 67, 70).

On April 11, 2025, Michael Brown and Joseph Kavan moved to withdraw as counsel for Plaintiff, apparently discovering some previously unknown conflict of interest during depositions. (Filing No. 92). On May 8, 2025, current counsel Kristopher J. Covi and Christian D. Rush entered their appearance on behalf of Plaintiff. (Filing Nos. 97, 98). Shortly thereafter, Mr. Place also moved to withdraw. (Filing No. 99). All three motions to withdraw were granted, but before doing so the court reiterated its expectation that case progression should not be further delayed.

Plaintiff, through its new counsel, then filed a motion to extend certain deadlines in the Second Amended Final Progression Order and the motion for leave to file a second amended complaint. Specifically, Plaintiff seeks to amend the complaint to limit the relief requested in the First and Second Causes of Action to equitable relief alone and add an additional cause of action for breach of contract. Plaintiff claims newly discovered evidence warrants the amendment and particularly references the disclosure of certain excise tax reports and discovered discrepancies between "amounts that it was paid [by] Defendants as part of the joint venture and what Defendants were actually paying for ammunition and importing into the country." (Filing No. 110, at p. 2). Defendants argue that Plaintiff has been aware of scope of the contract since at least May 24, 2024, when it disclosed the excise tax reports. As such, they do not believe any newly discovered facts or evidence warrant the amendment, and as result, object to any requested extensions.

3

## II. ANALYSIS

A. <u>Motion to Amend</u>

Federal Rule of Civil Procedure 15 provides that the Court should "freely give leave" to amend a pleading "when justice so requires." Nevertheless, a party does not have an absolute right to amend, and "[a] district court may deny leave to amend if there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Reuter v. Jax Ltd., Inc.*, 711 F.3d 918, 922 (8th Cir. 2013) (internal quotation and citation omitted). When a party seeks leave to amend under Rule 15(a) outside of the time period established by a scheduling order, the party must first demonstrate good cause under Rule 16(b). *See Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008); *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008).

"The movant's diligence in attempting to meet the case management order's requirements is the 'primary measure' of good cause." *Midwest Med. Sols., LLC v. Exactech U.S., Inc.*, 95 F.4th 604, 607 (8th Cir. 2024), reh'g denied, No. 22-2250, 2024 WL 1561617 (8th Cir. Apr. 11, 2024) (citing *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001)). "[I]f the reason for seeking the amendment is apparent before the deadline and no offsetting factors appear, the Rule 16 deadline must govern." *Financial Holding Corp. v. Garnac Grain Co.,* 127 F.R.D. 165, 166 (W.D. Mo. 1989). "Where there has been 'no change in the law, no newly discovered facts, or any other changed circumstance . . . after the scheduling deadline for amending pleadings,' then [the court] may conclude that the moving party has failed to show good cause." *Midwest Med. Sols.*, 95 F.4th at 607 (quoting *Hartis v. Chi. Title Ins. Co.*, 694 F.3d 935, 948 (8th Cir. 2012)).

Although prejudice to the nonmovant resulting from modification of the scheduling order may be a relevant factor, the court will generally not consider prejudice if the movant has not been diligent in meeting the scheduling order's deadlines. *See Sherman*, 532 F.3d at 717 (citing *Bradford*, 249 F.3d at 809). Leave to amend pleadings should also be denied

4

where the party unduly delayed in seeking the amendment. "Undue delay" is generally understood to occur "when a party waits until the eleventh hour of its case to file its motion to amend." *Nitride Semiconductors Co. v. Digi-Key Corp.*, No. 17-CV-4359 (JRT/LIB), 2020 WL 13016670, at *3 (D. Minn. Aug. 10, 2020) (internal quotation marks omitted). Whether to grant a motion for leave to amend is within the sound discretion of the district court. *Popoalii*, 512 F.3d at 497.

In this case, the court entered a Final Progression Order on February 24, 2024, which set Plaintiff's deadline to amend the pleadings or add parties for May 20, 2024. Signa filed the present motion to amend on June 6, 2025, over a year after the deadline. Therefore, Signa must demonstrate good cause to amend its complaint and the court finds it cannot. *See Sherman*, 532 F.3d at 716. This matter has been pending for almost two years and the case progression deadlines have been amended twice. In neither instance did Plaintiff request to extend the deadline to amend its pleadings. Plaintiff's deadline to do so was May 20, 2024. Notably, the evidence shows that the parties specifically conferred about amending this very deadline, which was extended for the defense by consent until September 23, 2024. (Filing No. 43). Defendant then filed a motion seeking leave to amend its answer and counterclaim on the new deadline, which was objected to by plaintiff. (Filing No. 54). At no time did plaintiff indicate it wished to amend its pleadings, although it was clearly having discussions with the defendants about those deadlines in particular. This exchange is an example of defendants' attempts to diligently meet its deadlines, recognizing in particular that certain deadlines may need to be extended, and reaching out to the court in advance of their expiration. Plaintiff has not shown similar diligence.

Plaintiff has also struggled to meet its discovery obligations laid out in prior progression orders throughout this litigation. On August 26, 2024, the parties entered a joint stipulation addressing alleged discovery deficiencies, dating as far back as its initial disclosures. (Filing No. 45). When those concerns were not addressed, Defendants filed a motion for sanctions (Filing No. 51), which was denied because Defendants did not first file a motion to compel. In response, Defendants then filed a motion to compel (Filing No.

5

73), which was granted in part on April 9, 2025. (Filing No. 91). At that time, the court found Plaintiff's responses deficient and ordered Plaintiff to supplement its discovery and produce additional documentation to Defendants within fourteen days. It denied Defendants' request for attorney fees.

The discovery delays, however, continued. On April 22, 2025, during the telephonic hearing in which the court granted Mr. Brown and Mr. Kavan's motions to withdraw, Mr. Place requested additional time to comply with that order, which the court reluctantly granted. (Filing No. 94). In doing so, the court was quite firm that additional delays were not acceptable, reminding counsel of his continuing obligation as counsel of record to fully comply with the court's order regarding the motion to compel, notwithstanding his intent to withdraw as well. After new counsel became involved, the court granted an additional brief extension. (Filing No. 105)**.** All told, it appears the discovery issues and plaintiff's delayed responses dragged out for approximately nine months, which no doubt resulted in additional time and expense. Regardless of any prejudice or lack thereof, the court simply cannot find that Plaintiff has been diligent in attempting to meet the court's requirements and therefore cannot show good cause for any additional amendments.

But even setting delay aside, Plaintiff also has not demonstrated any change in the law, newly discovered facts, or any other changed circumstance that sufficiently establishes good cause. *See Hartis*, 694 F.3d at 948. This case involves an oral joint venture between the parties. Plaintiff specifically alleges the discovery of the Defendants' excise tax reports alerted Plaintiff that it paid Defendants "over and above what required of them pursuant to the agreement of the parties," creating the need to add a breach of contract claim. (Filing No. 110, at p. 5). However, it appears the excise tax reports were disclosed as early as May 24, 2024. (Filing No. 111, at p. 10). Although the disclosure still came after Plaintiff's deadline to amend, such request at that time may have persuaded the court that the parties were attempting to diligently meet its deadlines. However, no request to amend was made at that time, or at anytime until now, when new counsel was retained.

The same is true of Plaintiff's newly pled breach of contract claim. (Filing No. 109-2, pg. 6, "The Winchester Contract"). The new claim alleges that Plaintiff cultivated a relationship with Winchester for ammunition supply and offered that relationship to the defendants through the terms of the joint venture, who ultimately usurped the Winchester business without any participation by Plaintiff. (Filing No. 109-2, at para 31-42). The record is clear that Plaintiff knew of the purported Winchester contract by at least September 2024. (Filing No. 111-6, 109:17-111:1). In particular, in its initial disclosures dated February 23, 2024, Plaintiff claimed just under $1.5 million in damages, which appears to roughly correlate only to the "Non-Winchester Shipments." (Filing No. 111-3, at p. 13). However, on September 12, 2024, Plaintiff demanded damages in excess of $70 million, when also accounting for the Winchester supply contract. Notably, at no point in between these dates, or for another eight months, did Plaintiff seek leave to amend the complaint to add breach of the Winchester contract. Plaintiff's previous failure to take appropriate action at the time of the discovery does not establish good cause to allow the amendment now. See *Kozlov v. Associated Wholesale Grocers, Inc.*, 818 F.3d 380, 395 (8th Cir. 2016) (affirming denial of motion to amend under Rule 16(b)(4) because plaintiff "did not act diligently in reviewing the evidence and making the motion to amend his complaint…[plaintiff] had [evidence relevant to the amended pleading] for three years before he filed the motion to amend").

The only apparent change in circumstance is the retention of new counsel. While the court acknowledges that Plaintiff's prior attorneys faced significant challenges throughout this case, retention of new counsel by itself is not sufficient to establish good cause. See *Hagen v. Siouxland Obstetrics & Gynecology, P.C.*, 286 F.R.D. 423, 425 (N.D. Iowa 2012) (addition of new lawyer does not establish good cause when defendants had experienced counsel throughout the case); *Alexander v. Westbury Union Free School Dist.*, 829 F.Supp.2d 89, 118 (E.D.N.Y. Nov. 4, 2011) ("To find good cause simply on the basis of new counsel would be to allow a party to manufacture good cause at any time simply by switching counsel") (citations omitted). Plaintiff acknowledges this precedent and further

asserts that it seeks only to "detangle an already complicated case and try to streamline its future," rather than get a "do over" to litigate according to its own strategy. (Filing No. 112, at p. 5). But, Plaintiff's proposed amendments are significant and include an additional contract and a new theory of recovery that was not plead by its three prior attorneys.

The court also notes that Plaintiff's statements concerning newly discovered evidence are broad and without any specific citations to the record or supporting evidence. There is, for example, no description as to when any new evidence was first discovered and why it was not known earlier. Plaintiff focuses primarily on the excise tax reports, but those were available to prior counsel some time ago. While Plaintiff argues that it filed the motion to amend promptly after new counsel was retained, a party does not meet the good cause standard under Rule 16(b) if the relevant information on which it based the amended claim was available earlier. *See Target Corp. v. LCH Pavement Consultants, LLC,* 960 F.Supp.2d 999, 1008 (D. Minn. Aug. 9, 2013). Plaintiff of course bears the burden of demonstrating good cause and must provide an "adequate explanation for any delay." *Simio, LLC v. FlexSim Software Products, Inc.* 983 F.3d 1353, 1366 (Fed. Cir. 2020). It fails to do so here. This district has been clear, consistent with the heightened requirements of Rule 16, that it will not generally find good cause to amend where there is "no change in the law, no newly discovered facts, or any other changed circumstance." *Cody Foster & Co. v. Urban Outfitters, Inc.*, 2015 WL 1981980, at *1 (D. Neb. May 4, 2015). Plaintiff has demonstrated that the only real material change in circumstance is the appearance of new counsel, and therefore, the court finds that good cause has not been established to justify its late request to amend.

Because Plaintiff has not established good cause under Rule 16(b), the court need not consider prejudice to the other parties. *See Sherman*, 532 F.3d at 717. Nevertheless, the court also considers that the defendants will be prejudiced if the court allows Plaintiff's untimely amendment. An amendment at this late stage would likely require the Defendant to reopen prior depositions and issue new written discovery to address the "Winchester Contract," which has apparently been known for some time, but never pled as a claim.

*Popp Telcom v. Am. Sharecom, Inc.*, 210 F.3d 928, 943 (8th Cir. 2000) ("Where an amendment would likely result in the burdens of additional discovery and delay to the proceedings, a court usually does not abuse its discretion in denying leave to amend.") Given the discovery hurdles that Defendant has already faced, the court is not inclined to acquiesce. Based on the foregoing reasons, the motion for leave to file a second amended complaint is denied.

    B. <u>Motion to Extend</u>

    Plaintiff also moves to extend certain case progression deadlines. (Filing No. 103). The current deadlines are set forth in the Second Amended Progression Order and were entered on December 26, 2024. (Filing No. 72). They have remained unchanged since then. Many of the deadlines have now expired, including the deadline to complete written discovery, to file motions to compel, and to disclose expert witnesses. For many of the same reasons already noted, the court finds that Plaintiff has not shown good cause to justify extending the deadlines to complete written discovery or file motions to compel. Indeed, the progression order makes clear that extensions "will not be considered absent a showing of due diligence in the timely progression of this case and the recent development of circumstances, unanticipated prior to the filing of the motion, which require that additional time be allowed." While certainly an appearance of new counsel may not have been anticipated, the same attorney of record was involved in the case on behalf of Plaintiff since its inception and until May 19, 2025, when his motion to withdraw was granted. (Filing No. 96). At most times in this case, Plaintiff has been represented by no fewer than three attorneys of record. At no time since Filing No. 72 has Plaintiff requested to amend or extend the progression order. While the court is sympathetic to new counsel's desire to button up some issues and initiate more time to complete certain tasks, the court cannot do so unless there is an affirmative showing of good cause.

    However, the court finds that an exception should be made for Plaintiff's request regarding expert disclosures. The deadline for Plaintiff to identify its experts expired on April 14, 2025, and complete expert disclosures were due May 19, 2025. (Filing No. 72).

9

The court notes that Plaintiff's former counsel moved to withdraw on April 11, 2025, and the matter did not come on for hearing until April 22, 2025. During that hearing, Mr. Brown stated that he became aware of the conflict of interest on or about April 9, 2025, and immediately ceased all work on the case. (Filing No. 94). Assumedly, that also extended to the expert disclosures, as nothing was ever filed by any of Plaintiff's counsel prior to the April 14 deadline. Although the parties are still held to the good cause standard set forth in Rule 16, the court finds that the circumstances surrounding these extensions are different and will grant a short extension.

As for deadlines that have not yet expired, the analysis is somewhat different, as the parties need to only show "due diligence in the timely progression of this case and the recent development of circumstances" to warrant additional time. Again, the court recognized during the most recent conference call that some limited extensions may be warranted to allow counsel to get caught up on the case, however, was unwilling to re-progress the case from the beginning. (Filing No. 107). As Plaintiff notes, new counsel promptly filed the motion to extend within fourteen days of entering their appearances. (Filing No. 103). While the court will not extend the deadlines previously mentioned, it will grant the motion to extend those case progression deadlines that have not yet expired, including both the deposition and dispositive motion deadline. The court further finds that the prejudice to doing so to Defendants, if any, is minimal. Plaintiff's proposed deadlines appear to be proportional to both parties, and brief enough not to disrupt case progression significantly. Based upon the new deadlines, this matter should be ready for trial in spring 2026. The court finds that this slight delay will not be prejudicial and will grant the motion to extend, in part, as fully laid out below.

Accordingly,

IT IS ORDERED:

1. Plaintiff's Motion for Leave to File Second Amended Complaint is denied. (Filing No. 109).

2. Plaintiff's Motion to Extend Progression Order is granted in part and denied in part. (Filing No. 103). The court will enter a new scheduling order outlining the following deadlines:

   a. The deadlines for identifying expert witnesses are:
      i. For the plaintiff(s): August 29, 2025.
      ii. For the defendant(s): September 29, 2025.
      iii. Plaintiff(s)' Rebuttal: October 13, 2025.
   b. The deadlines for complete expert disclosures for all experts are:
      i. For the plaintiff(s): September 29, 2025.
      ii. For the defendant(s): October 29, 2025.
      iii. Plaintiff(s)' rebuttal: November 12, 2025.
   c. The deposition deadline, including but not limited to depositions for oral testimony only under Rule 45, will be extended to October 31, 2025.
   d. The deadline for filing motions to dismiss and motions for summary judgment will be extended to November 14, 2025.
   e. The deadline for filing motions to exclude testimony on Daubert and related grounds will be extended to November 26, 2025.

3. A status conference to discuss case progression, the parties' interest in settlement, and the trial and pretrial conference settings, is scheduled before the undersigned magistrate judge on **September 30, 2025**, at 10:00 a.m. by telephone. Counsel shall use the case conference instructions at Filing No. 64 to participate in the call.

Dated this 1st day of August, 2025.

BY THE COURT:

s/ Ryan C. Carson
United States Magistrate Judge